2du276
93  630

CASE 21—PETITION EQUITY—FEBRUARY 23.

# Temple, Barker & Co. vs. Poyntz, &c.

### (And five other cases consolidated.)

APPEAL FROM FLEMING CIRCUIT COURT.

1. An assignment in contemplation of insolvency, under the act of 1856, trans-fers to the use of the general creditors all the property owned by the assignor at the date of the assignment, but does not include after-acquired property, nor could the thing assigned and the proceeds of the sale of it be both subject to the debts of creditors. Although the sale may not have been made in contemplation of insolvency, yet if the notes taken for the price be afterwards so assigned, they will inure to the benefit of all the creditors.

2. Where there is no registration of the assignment of land and personalty, pos-session by the purchaser for more than six months prior to the filing of the petition being overt, and therefore constructively notorious, will bar a proceeding to subject them under the act of 1856.

3. Both insolvency and an assignment to a *creditor* or colluding stranger as osten-sible purchaser, must concur before the trust for all the assignor's creditors can result.

W. H. CORD, for appellants, cited 7 *Dana*, 412; 3 *B. Mon.*, 120, 115, 116; 1 *Litt.*, 302; 1 *Met.*, 454; 1 *Rev. Stat.*, 554; 2 *Met.*, 54; 2 *Ves., jr.*, 187; 2 *Daniel*, 203; *Hilliard*, 19; 3 *Story's Rep.*, 454; 2 *Barn. & Adl.*, 93; 11 *Mees. & Wels.*, 531-3; 1 *Hare*, 647; 1 *Pick.*, 164; 2 *Sumn.*, 151; 3 *Met.*, 401; 2 *Strong*, 630; 2 *Dana*, 406; 5 *B. Mon.*, 354.

A. DUVALL on same side.

WM. S. BOTTS, for Howe, &c., cited 1 *Met.*, 450; 2 *Met.*, 336, 457; 3 *Met.*, 391; 5 *B. Mon.*, 237; 4 *Met.*, 32, 213, 319; 3 *Seld.*, 478; *Stan. Code*, p. 67, note *G; Pr. R.*, 221; 1 *Rev. Stat.*, 556.

JUDGE ROBERTSON DELIVERED THE OPINION OF THE COURT:

In September, 1860, the appellant, *William T. Howe*, sold to *J. C. Sously* his retail stock of merchandise for $4,500; and in October, of the same year, he made to *A. Burns* an execu-tory sale in writing of his farm for $13,000, and, as may be inferred, simultaneously delivered the possession to each of the vendees, *neither of whom was his creditor.* Most of the pro-

ceeds of these sales were soon appropriated, by assignments of some of the notes and otherwise, to the payment of cred-itors who are parties to this consolidated record.

In July, 1861, the appellees, *Temple, Barker & Co.*, unpaid creditors of *Howe*, filed this petition in equity, charging that the sales to *Sously* and *Burns* were made " in contemplation of insolvency." for preferring other creditors; and, therefore, claiming a distribution of the property according to the pro-visions of the statute of 1856 against fraudulent assignments for preferring creditors by an insolvent debtor. *Howe's* answer denied his imputed insolvency and purpose of preference as charged. Amendments to the petition, filed before *Howe* had answered, and each of them more than six months after the assignment of the notes, charged that those assignments also were fraudulent in law.

The circuit court adjudged the two first principal sales to *Sously* and *Burns* fraudulent in the eyes of the statute, and decreed distribution *pari passu* among all the creditors except such as had been paid out of the proceeds, and as to whom the petition was dismissed, and decreed, also, that the sale of two of *Burns'* notes to *McGowan* was constructively fraudu-lent. And the appellant *Smith* having purchased from *Howe* a slave before any of the other assignments had been made, the circuit court also adjudged that property as held in trust. for *Howe's* creditors.

Among the many questions presented by this multiform appeal, we will consider only that involving the limitation of six months, and that also of the alleged insolvency and pur-pose of preference. 1. The 1st section of the statute sub-stantially provides that every sale, mortgage, and assignment made by debtors in contemplation of insolvency, and with the design to prefer one or more creditors, shall operate as a trans-fer of the debtor's effects, and shall inure to the benefit of all his creditors; and the 2d section literally provides that all such transfers " shall be subject to the control of courts of equity upon the petition of any person interested, filed within six months *after the recording of such transfer or the delivery of the property or effects transferred.*"

The 1st section transfers to the use of the general creditors all the property owned by the assignor at the date of the assignment, but does not include any after-acquired property. Nor could the thing so assigned, and the proceeds of the sale of it, be both subject to distribution among all the creditors of the vendor.

If, however, the sale or assignment was not made in contemplation of insolvency, still, if the proceeds held as the property of the assignor shall have been afterwards assigned to a creditor in contemplation of actual or impending insolvency, and for preferring the assignee over other creditors, such proceeds may be made to inure to the benefit of all the creditors. But in this case we are not allowed to presume that the condition and motives of *Howe* were essentially different when he assigned the notes from what they were when he sold the land and stock of goods. And as each of all the assignments was made and the possession of the thing assigned delivered more than six months before it was attacked by petition, the limitation bars the suit as to each or none.

There was no registration of any one of the assignments— no one of them being recordable as constructive notice; and, therefore, possession alone must bar the remedy, if it be barred by time. The possession of the land and store goods for more than six months before the original petition was filed being overt, and therefore constructively notorious, must, according to an express provision in the statute, be deemed a conclusive bar to the suit concerning all that property. And, according to the letter of the statute including *all* "*effects*," it operates in the same way as to the assignments of the choses in action. And we cannot modify the statute by excepting from the limitation that kind of property merely because the possession of it is not so open or easily known by strangers as that of more substantive property.

The chief motive for prescribing so short a limitation was to guard the rights of purchasers and sub-purchasers, after the lapse of reasonable time for inquiry by vigilant creditors, and, after that probation, to secure repose to a possession held in good faith during the prescribed interval. And if, in the

meantime, a diligent creditor fails to obtain actual knowledge of the possession, and thereby potential knowledge of the assignment, it may have been deemed better that no such new and extraordinary remedy, so inconsistent with the policy of the venerable common law, should longer be kept open. In such a case we do not feel authorized to change the clear letter of the statute by a strained construction excepting any kind of property which it expressly includes. Consequently, we must apply the bar to all the suits embraced in the record.

2. But if, in any respect, the foregoing conclusion be not right, our opinion on the second ground will certainly dispose of all the cases alike.

The record does not sustain the judgment of the circuit court, either as to *Howe's* insolvency at the dates of the assignments, or as to his motive in making any of them.

Both insolvency and an assignment to *a creditor* or colluding stranger as ostensible purchaser, must concur before the trust for all the assignor's creditors can result from the purposed operation of the statute. And neither of these indispensable prerequisites has, in our opinion, been established in this case.

At the dates of the principal assignments, the vendable value of his estate was, according to a reasonable deduction from all the evidence, at least $25,500—and the maximum estimate of his then entire indebtedness did not exceed $17,500, *which was precisely the aggregate amount of these two first assignments.* Immediately after these sales *Howe* proceeded to pay his debts with apparent diligence and good faith, seeming to contemplate the payment of all. Shortly after the assignments he made satisfactory arrangements with *Temple, Barker & Co.*, and other unpaid creditors, for securing full payment to all of them, and, for effectuating that security, a suit was brought in the spring of 1861, and may be still pending. All the witnesses, consisting of *Howe's* neighbors and most intimate acquaintances, testified with confidence, that, in the fall of 1860, and for about eighteen months afterwards, he was considered solvent, and his credit

was unquestioned. It appears that his final failure, about two years after the principal assignments, was the result of accidental losses in a pork contract and some petroleum adventure. And there is not only no extraneous badge of an illegal intent, but there is strong intrinsic evidence of an honest purpose not to prefer creditors, but to facilitate and insure the payment equally of all.

Our conclusion is, that *Howe* was neither insolvent when either of the assignments was made, nor made either of them in contemplation of insolvency to prefer any one creditor.

Moreover, neither *Sously* nor *Burns* was a creditor of *Howe;* and, therefore, as each of them seems to have been a *bona fide* purchaser, their assignments are not embraced by the statute. And there is no proof that any assignment of the proceeds of these was made in contemplation of contingent future insolvency, or that any of the assignees so understood.

Wherefore, the judgment against Howe, that against McGowan's executor, and that against W. H. Smith, are reversed, and the judgment in favor of Pearce, Tolle & Co., and that in favor of S. B. Poyntz, and that also in favor of W. H. Smith, are affirmed, and the causes remanded for final disposition according to this opinion.