Wherefore, the judgment is reversed, and the cause remanded for a new trial, with directions to allow the defendant to prove the fact of the motion for a new trial in the former case, and other facts connected therewith, should he offer to do so, and for a final judgment in conformity with the principles of this opinion.

CASE 26—PETITION EQUITY—JUNE 14.

# Letcher, &c., vs. Stagner, &c.

APPEAL FROM MADISON CIRCUIT COURT.

Where an insolvent debtor went into court on the first day of the term, and confessed judgments in favor of some of his creditors, on which he caused executions to issue forthwith, and to be placed in the hands of the sheriff, thereby creating a lien on all his property—these acts constituted an *assignment in contemplation of insolvency,* within the statute prohibiting such assignments. (1 *Rev. Stat.,* 545.)

BURNAM & CAPERTON, for appellants, cited 1 *Rev. Stat.,* 545; *Myers' Suppl't,* 293.

S. TURNER for appellees.

R. HERNDON, on same side, cited 6 *Jacob's Law Dict.,* 122; *Broom's Maxims,* 509, 581; 3 *Mon.,* 157; 1 *Dana,* 531.

A. J. JAMES on same side.

JUDGE ROBERTSON DELIVERED THE OPINION OF THE COURT:

On the first day of the March term, 1861, of the Madison circuit court, Albert Stagner—who was then indebted greatly

beyond his means of payment, and expected judgments against him in a few days to the amount of about $2,000 in suits then pending—went into court as soon as it was opened, and, in fulfillment of an agreement, as we are authorized to presume, confessed a judgment in favor of Owen W. Walker for $7,621, and to several others of his creditors for different sums, amounting in the aggregate to $14,475, and directed, or co-operated in directing, executions forthwith on all those judgments, all of which executions were, at his instance, delivered that day to the sheriff, who indorsed on some of them a delivery before 10 o'clock that morning. During the same day Mrs. Anna Letcher filed a petition attacking the judgments and executions as a fraudulent assignment, and, as one of many pretermitted creditors of Stagner, praying for equal distribution among all his creditors according to the spirit and purpose of the statute of 1856 against fraudulent preferences by insolvent debtors. Other creditors filed similar petitions, and they were all consolidated. The aggregate indebtedness to these attacking creditors was about $13,700, making an entire debt of about $28,103; and all Stagner's estate, afterwards sold, brought only $9,758, thus leaving unpaid $4,717 of the confessed judgments, and, of Stagner's whole debt, $18,417.

This appeal seeks a reversal of the decree dismissing all the petitions.

The aim of the act of 1856 was to secure, as far as it could, equality among the creditors of an insolvent debtor, by invalidating any act whereby he might attempt to transfer to one or more of them, to the exclusion of the others, property, or any lien on it, giving priority or other inevitable advantage. Such priority or advantage might result from a sale or a mortgage or an assignment, and, therefore, all these modes of preference are interdicted. But any other mode chosen with the same object, and operating to the same end, whatever may be its form, should be considered an assignment, as it must be essentially; otherwise, the letter may kill the spirit, and a statute, which should be liberally construed, may easily be evaded and made a dead letter.

Although a simple confession of judgment might not give such inevitable preference, yet the transaction in this case, if upheld, would certainly do so, because it gives a lien on the debtor's property, and thus *"transfers"* an interest in it as effectually as a more technical "mortgage" or "assignment" could possibly have done. It was, therefore, in essence and effect, and, consequently, in both the popular and the legislative sense, *"an assignment,"* made "in contemplation of insolvency." The insolvency, and the knowledge of it by the assignor, as well as the assignees, and the interdicted purpose of illegal preference, are indisputable. Then why shall such an assignment escape the condemnation of the statute? It seems to us that it ought not, and, by the judgment of this court, it shall not.

And our construction of the transaction and of the pre-existing law is fortified, rather than weakened, by the statute of March the 2d, 1862 (*Myers' Supp't*, 239), which provides: "That every judgment which shall be *suffered* by any defendant, or any act or device which shall be done or resorted to by debtors in contemplation of insolvency, and with the design to prefer one or more creditors to the exclusion, in whole or in part, of others, shall operate in the same manner and to the same effect, so far as other creditors of said debtors are concerned, as sales, mortgages, and assignments, made in like contemplation and with like design, are made to operate by the act (1856) to which this is an amendment."

This enactment, by making the *mere suffering* of a *judgment* constructively fraudulent, clearly recognizes the principle of our decision in this case, and necessarily implies that the giving of an execution lien in addition to confessing a judgment, was embraced by the original statute itself, which, in that respect, needed no amendment.

And our conclusion is also aided, and made consistent with the general legislative policy and intent, by the 1st section of the statute against fraudulent conveyances, &c. (1 *vol. Stanton, p.* 545), which avoids every fraudulent "*charge* upon any estate."

But, without these collateral auxiliaries, we are satisfied that the *liens* given as transfers of interest in this case operated as assignments, and were therefore void.

Wherefore, the judgment dismissing the petitions, and all consequential orders and judgments, are reversed and set aside, and the cause remanded for further proceedings.