CASE 84—PETITION EQUITY—MAY 25.

## Wilson, &c., vs. Snelling, &c.

APPEAL FROM BATH CIRCUIT COURT.

1. An insolvent debtor, by agreement with some of his creditors, left the county of his residence, and returned again secretly, so as to enable them to have process served on him by a special deputy, appointed at their instance; and, when this was done, he again left, and remained out of his county, to prevent other creditors from having process executed on him, so as to prevent them from obtaining judgments against him at the approaching term of the circuit court, which commenced March 17, 1862. Judgments were obtained by the creditors who obtained service as above. They caused executions to issue and be levied on the debtor's land, which was sold to satisfy their executions, and purchased by one of them. *Held*—That the procuring of these judgments, executions, and the sale, by the means resorted to, was, essentially, an assignment within the purview of the statute of 1856. (*See Letcher, &c., vs. Stagner, &c.*, 2 *Duvall*, 424, *and also Act of March* 8, 1862, *Myers' Sup.*, 239.)

2. As no deed was made and recorded, the possession of the land not delivered, and executions not returned, at the time of the institution of the action to set aside the sale, and subject the property to the benefit of all the creditors, the six months' time provided in the act of 1856, so far from having expired, had not commenced to run.

W. H. CORD,                                    For Appellants,

CITED—

*Act of Feby.* 20, 1864, *Myers' Sup.*, 293.

3 *Story's Rep.*, 450 ; *Everett vs. Stone.*

17 *B. Mon.*, 177 ; 3 *Dallas*, 394.

2 *Duvall*, 425 ; *Letcher vs. Stagner.*

NESBITT & GUDGELL,                         For Appellees,

CITED—

*Revised Stat.*, 1 *Stant.*, 553 ; 2 *Ib.*, 110.

*Myers' Supplement*, 239.

1 *Duvall*, 29 ; *Robbins vs. Oldham.*

*Act of March* 8, 1862.

JUDGE WILLIAMS DELIVERED THE OPINION OF THE COURT:

Matt. Wilson, being insolvent, at least owing more than his property was worth, and being sued by some creditors, made an arrangement with Snelling, or Emmons & Snelling, to leave the county of Bath, his place of residence, and cross over into Fleming, an adjoining county, until they should bring suit and procure writs against him, when he was to return, so as to have these executed, and then again be absent, so that no other judgments might go at the ensuing term of the Bath circuit court. Snelling and Emmons & Snelling, accordingly, brought their suits, obtained summons, had their own clerk appointed special deputy to execute the writs, they then doing business on the Licking river, which seems to be the boundary between the two counties ; and Matt. Wilson, in pursuance to the arrangement, and notice which they gave him that the writs were ready, about dark, on the night of March —, 1862, came across the river and permitted the writs to be served in time for the ensuing term of the court, which begun March 17, 1862, and then returned to Fleming, and remained out

of Bath county until it was too late to serve process, so as to get judgment at that term. ·They obtained their judgments, sued out executions, and had these levied on a tract of one hundred and fifteen acres of land, which was valued at twenty dollars per acre, and which was sold by the sheriff July 14, 1862, and Snelling became the purchaser at one thousand five hundred and fifty dollars, which, after satisfying the execution in favor of A. R. Sanders against Matt. Wilson, Wm. Wilson, and J. P. Snelling, for one hundred and twenty-one dollars, with interest from August 4, 1861, and six dollars and eighty-five cents costs, and two executions of Emmons & Snelling, left six hundred and fifty-nine dollars and ninety-nine cents to be credited on Snelling's execution against Matt. Wilson.

Elizabeth Wilson, G. W. Wilson, and R. T. Wilson & Co., all being separate creditors of Matt. Wilson, brought this joint suit against him, Sanders, Snelling, Emmons & Snelling, and others, February 16th, 1863, alleging that all the aforesaid arrangements, by which Snelling & Emmons and Snelling were enabled to obtain their judgments and executions, were made and entered into by said Matt. Wilson in contemplation of insolvency, and with a design to prefer them to the exclusion of other creditors; and that such were the design of Snelling & Emmons and Snelling, and that, by reason thereof, the same inured to the benefit of all his creditors.

It is averred that the executions, although levied in June, 1862, and the land sold July 14th, 1862, had not been returned to the clerk's office when this suit was filed, as they were found in the sheriff's hands, and this allegation is not controverted, nor does the record show when the sheriff did actually return the executions to

the clerk's office. The sheriff's return on the executions is dated July 14th, 1862, the day of sale; but this does not disprove the allegation that he still held them in his hands when the suit was brought.

There are two questions involved:

1. Was this an assignment within the purview of the statute of 1856?

2. Was the suit brought within proper time? Upon the solution of these depends the correctness of the judgment dismissing plaintiff's petition absolutely.

As said by this court in *Letcher, &c., vs. Stagner* (2 *Duvall*, 424), "the aim of the act of 1856 was to secure, as far as it could, equality among the creditors of insolvent debtors, by invalidating any act whereby he might attempt to transfer to one or more creditors, to the exclusion of others, property, or any lien .upon it, giving priority or other inevitable advantage.

"Such priority or advantage might result from a sale or a mortgage or an assignment, and, therefore, all these modes of preference are interdicted; but any other mode chosen with the same object, and operating to the same end, whatever may be its form, should be considered an assignment, as it must be, essentially, otherwise the letter may kill the spirit, and a statute, which should be liberally construed, may easily be evaded and made a dead letter."

The only judgments, so far as this record shows, that went against Matt. Wilson at the March term, 1862, of the Bath circuit court, Snelling or Emmons & Snelling were interested in, either as plaintiffs or security for him.

The evidence does strongly indicate that Snelling and Emmons & Snelling knew, or had information, that Matt. Wilson owed more than he was able to pay, and that this land constituted nearly all his property liable to execu-

tion. With this knowledge on their part, the object of Matt. Wilson's going to Fleming until these creditors should obtain their writs, and have their own clerk specially deputized to serve them, and then his coming across the river about nightfall that they might be served, and then his return to Fleming county, can hardly be misunderstood. Their object was to obtain judgments and make their debts to the exclusion of other creditors, or, perhaps, it would do to say, whether others made theirs or not.

The judgment of five hundred and thirty-four dollars and eighty-four cents, with interest from January 1, 1862, in favor of Emmons & Snelling, and the judgment of one thousand three hundred dollars, with interest from November 2, 1861, in favor of Snelling against Matt. Wilson, alone evidence his insolvency, as his property was insufficient to satisfy these. That the procuring of these judgments, executions, and the sale, by the means resorted to, was essentially an assignment within the purview of the statute of 1856, we do not doubt—as much so as was the confession of the judgment, and permitting the executions to go thereon, in *Letcher vs. Stagner*. These things as effectually operated the consummation of the object as that did, and comes as thoroughly within the evils intended to be remedied by it. And if it intended the inhibition of preference among *bona fide* creditors, this arrangement was as contrary to its pervading spirit. But such transfers must be assailed within "*six months after the recording of the transfer or delivering of the property or effects transferred.*"

No legal possession, such as would notify other creditors, had been taken of this land on the sale, nor could the sheriff then deliver it without a delivery of the growing crop, which he did not sell, and which was not sub-

ject to levy. No order of possession had been obtained from the court. No deed had been made by the sheriff to Snelling and lodged for record; nor, indeed, had the executions, with the actings of the sheriff thereon, been returned to the clerk's office; therefore, there was no legal "*recording*" of the transfer; no legal "*delivery of the property;*" hence, the six months, so far from having expired, had not began to run when this suit was brought.

The executions and levy inured an assignment to the benefit of all the debtor's creditors; the execution sale, therefore, should be set aside, and the land resold, and its proceeds divided *pro rata* among Matt. Wilson's creditors.

The judgment dismissing the petition of appellants was essentially erroneous, and is, therefore, reversed, with directions for further proceedings in conformity to this opinion.