5b 539
89 426

5b 539
102 339

---

CASE 45—PETITION EQUITY—SEPTEMBER 17.

## Sawyers, &c., vs. Langford, &c.

APPEAL FROM ROCKCASTLE CIRCUIT COURT.

1. PROCEEDINGS UNDER STATUTE OF MARCH 10, 1856 (1 STANTON, 553).—
A sale, mortgage, or assignment, being assailed as fraudulent under the provisions of said statute by one creditor, within the six months, as provided therein, every other creditor of the defendant has a right to file his claim subsequently, and become a party to the proceeding whilst pending, and to share *pro rata* with the plaintiff. By filing their claims, and making themselves parties to the proceedings whilst pending, they derive an equal benefit with the first plaintiff, which he cannot destroy by a dismissal of his petition.

2. The plaintiff, who filed his action within the six months, under the provisions of the act of March 10, 1856, *cannot dismiss his petition;* nor can the court file it away "never to be docketed again," so as to defeat the action as to other creditors who had filed their claims, and made themselves parties whilst the proceeding was pending.

3. In a proceeding under the statute of March 10, 1856, all the essential facts, as well as part of them, may be referred to the master to ascertain and report the evidence, as well as his opinion thereon.

JOHN S. VANWINKLE and
A. J. & JOHN B. JAMES,                    For Appellants,
                        CITED—
*Act of March* 10, 1856, 1 *Stanton,* 554–5.
4 *Met.,* 23–4; *Applegate, &c., vs. Munell, &c.*
4 *Met.,* 320–22; *Story, &c., vs. Graham.*

CHIEF JUSTICE WILLIAMS DELIVERED THE OPINION OF THE COURT:

B. R. P. Langford mortgaged a tract of his land January 18, 1861, to Liberty Langford, to secure him as security in two debts of eighty-seven dollars and ninety-two cents, and one hundred dollars; and subsequently, on October 8, 1861, he made another mortgage on the same, and including other lands, to Stephen Langford, to secure him as surety in a debt of seven hundred and fifty dollars; and J. and Moses Newman, to secure them as his sureties in a debt of one hundred and thirty dollars. April 7, 1862, within six months of the latter, but not of the former mortgage, Miller & Williams, creditors of the mortgagor, filed their petition, averring that said mortgages were given in contemplation of insolvency, and to prefer some to the exclusion of other creditors, and claimed that the same inured to the benefit of al the mortgagor's creditors under our statute of March 10, 1856 (1 *Stant. Rev. Stat.,* 553).

Appellants Sawyers and Hazlewood, claiming to be creditors of the mortgagor, filed separate petitions to

become parties, August 13, 1862; and by answer and cross-petition, they seek to bring said mortgages within the statute of 1856. Six months from the last mortgage had elapsed before they sought by pleadings to avail themselves of it.

February 28, 1865, Miller & Williams dismissed their petition.

March 9, 1865, judgment was rendered on submission, in favor of Miller & Williams, for their alleged debts.

Sawyers recovered judgment for his debt, Hazlewood for his debt; and then the cause was referred to the master to ascertain the amounts, and to whom the mortgagor was indebted when he made said mortgages, and the amount of his property, &c.

At the succeeding August term, the mortgagor moved to set aside said judgment as to Miller & Williams, because their suit had previously been dismissed, and as to the reference to the master, because it was premature; but instead of acting upon this motion, the court ordered that the papers be filed away, "*never to be docketed again;*" from which the creditors attacking said mortgages have appealed.

The motion to set aside the judgment was only as to Miller & Williams; therefore, it did not suspend the personal judgment which Sawyers and Hazlewood had respectively obtained; and so far said order was no injury to them; but as to the order filing away, it was equivalent to rejecting their prayer for a sale and *pro rata* allowance out of the debtor's property; and of this they have a right to complain, unless their failure to attack said mortgages, within six months from their being lodged for record, precludes them from assailing these after Miller & Williams dismissed their petition.

The language of section two of said statute is, that "all such transfers as are herein declared to inure .to

the benefit of creditors generally, shall be subject to the control of courts of equity, *upon the petition of any person interested*, filed within six months after the recording of such transfer, or the delivery of the property or effects transferred." The filing of Miller & Williams' petition within six months of the latter and more important mortgage, gave the chancellor control of the whole case, if said latter mortgage falls within the denunciations of said statute; and as the mortgage " operated as an assignment and transfer of all the property and effects of such debtor, and *inured to the benefit of all his creditors*," every other creditor who came in subsequently to the filing of Miller & Williams' petition was entitled to share *pro rata* with them; and having made themselves parties to these proceedings whilst pending, derived an equal benefit with them, which they could not destroy by a dismissal of their petition. Any creditor could claim the benefit of such transfers under the statute; and upon such being made, the assignment *operated a transfer of all the debtor's property to the equal benefit of all his creditors*, and gave the court the control thereof.

The order, so far as it went, was not premature; for the commissioner was directed to ascertain essential facts for the determination of the case, though the direction was not to ascertain all the necessary facts, as it might have done, and as would be both proper and convenient to do.

The amount and value of the debtor's property, and the amount of his indebtedness, were essential to determine whether or not he was insolvent; and if so, then, whether such mortgages were made in contemplation of such insolvency, and with the design to prefer some to the exclusion of other creditors. All these

essential facts, as well as part of them, might well be referred to the master to ascertain and report the evidence, as well as his opinion thereon.

As none of the creditors assailed the first mortgage within six months from its recording, it was beyond the control of the court, its only legitimate use being to ascertain the motive with which the second mortgage was made, and to have the mortgagee before the court to ascertain the amount due thereon, and secure its payment out of the proceeds of the mortgaged premises, should the second mortgage be ascertained as within the inhibitions of the statute of 1856, which would result in the sale of all the debtor's property, and a *pro rata* division among all the other creditors than the first mortgagee.

Wherefore, the order directing said cause to be filed away, "*never to be redocketed again*," is reversed, with directions for further proceedings consistent herewith.