11b 209
99 402
11b 209
a102 339

CASE 29—PETITION EQUITY—APRIL 22.

# Whitehead, &c. v. Woodruff, &c.

## APPEAL FROM CARROLL CIRCUIT COURT.

1. FRAUDULENT CONVEYANCES VOIDABLE.—The making of sales, mortgages, or the like to prefer creditors is not of itself such fraud as will *ipso facto* vitiate the act and render it void, but only makes it voidable at the election of creditors made by petition filed within six months.  (Wintersmith, &c. v. Pointer, &c., 2 Met. 460.)

2. *Where a debtor commits more than one fraudulent act,* such as can be made to operate under the statute of 1856 as an assignment of all his property for the benefit of his creditors, and they institute suit within six months after the last act only, the judgment therein operates to vest in the creditors such estate as the debtor had at the time that act was committed, and can not divest prior liens, although they may have been created by the former fraudulent acts of the debtor, and could also have been set aside if suit had been instituted in time.

3. *Giving a preference to one or more creditors* is not in itself fraudulent as to other creditors.  (8 Dana, 215; 18 B. Mon. 201; 3 Met. 539; 2 Duv. 278; *Ibid.* 371.)

4. EXECUTION LIENS.—From the time of its delivery to the proper officer an execution binds, and creates a lien on every species of estate of the defendant subject to levy and sale under execution, whether so at common law or made subject by statute, and the same character of lien on encumbered property as on other.

H. COX, . . . . . .⎫
PRYOR & CHAMBERS, ⎬ . . . . . . . . For Appellants,

(Briefs not in records.)

W. B. & H. M. WINSLOW, ⎫ . . . . . . For Appellees,
JOHN RODMAN, . . . ⎭

CITED

Revised Statutes, 1 Stanton, pages 488, 553.

2 Met. 194, Forrest v. Phillips.

2 Duvall, 424, Letcher v. Stagner, &c.

18 B. Mon. 449, Phillips, &c. v. Winslow, trustee.

VOL. XI.—15

JUDGE COFER DELIVERED THE OPINION OF THE COURT.

On the 11th of March, 1861, several creditors of Dunn brought suit against him in the Kenton Circuit Court on debts amounting in the aggregate to a large sum, and thereupon on that day, as the record recites, " came the defendant and confessed judgment" in each case, and judgment was accordingly entered.

On the 22d of March of the same year another creditor of Dunn brought suit against him in the Gallatin Circuit Court, and he confessed judgment as in the other cases.

Dunn resided at the time in Carroll, and suits had been previously commenced in the circuit court of that county on the same debts on which judgments were confessed in Kenton and Gallatin.

Executions of *fieri facias,* issued from the Kenton court, were placed in the hands of the sheriff of Carroll County on the next day after the judgments were rendered, and one issued from the Gallatin court was placed in his hands on the same day the judgment was rendered, and all were levied together on various tracts of land and town lots and upon four slaves as the property of said Dunn. The executions do not show when the levies were made; but they show that the property levied on was advertised and offered for sale May 6, 1861, but no sale was made for want of bidders.

The various tracts of land and town lots were under mortgage to different persons, and the levies were all made subject to the mortgages, and the levies on the slaves and two of the tracts of land were made subject to a prior levy under an execution in favor of Foree, another creditor of Dunn, for $1,431.17, with interest and cost.

May 9, 1861, *venditiones* were sued out in all the cases in Kenton and Gallatin, which were returned by the sheriff, in accordance with the provisions of the act of May 24, 1861, entitled *"An act to suspend the circuit and other courts in this*

*commonwealth and for other purposes."* (Myers's Supplement, page 133.)

February 19, 1862, Woodruff and other creditors of Dunn and of Dunn & Co. brought this suit in the Carroll Circuit Court against Dunn and the plaintiffs in the judgments in Kenton and Gallatin, one Conn and others, in which they alleged in substance:

1. That the claims upon which said judgments were obtained were without consideration and fraudulent, and that the plaintiffs in said judgments and the defendant Dunn had combined and confederated together with the fraudulent intent to cover up the property of Dunn and hinder the plaintiffs and other creditors of said Dunn from realizing any thing out of their debts against him, and that the proceedings in the courts of Kenton and Gallatin in which the judgments were obtained were fraudulent, and that the judgments were confessed "in contemplation of insolvency and with the design to prefer one or more creditors to the exclusion of others, and that all the proceedings were secretly and covertly prosecuted and carried on," and that said courts at that time had no jurisdiction to render the judgments.

2. They also alleged "that on the 2d day of September, 1861, the said Dunn and his partner Donaldson, under the firm name and style of Dunn & Co., by writing assigned and transferred to the defendant Conn a judgment recovered by them in the Carroll Circuit Court against one J. W. Dean, for the purpose of securing him in the payment of a debt on which he had recovered a judgment in the Kenton Circuit Court," and "that said assignment was made in contemplation of insolvency and with the design to prefer the said Conn to the exclusion of the plaintiffs and his other creditors, and operated as an assignment of all his property for the benefit of his creditors."

At the March term 1862, Dunn having failed to answer, the petition as to him was taken *pro confesso,* and it was then

adjudged "that the assignment dated September 21, 1861, of the judgment of the Carroll Circuit Court in the name of J. W. Dunn & Co. against J. W. Dean by said Dunn & Co. to the defendant, J. V. Conn, as mentioned in the petition, was made in contemplation of insolvency of the defendant J. W. Dunn, and with the design to prefer one or more creditors to the exclusion, in whole or in part, of others, and operated as an assignment and transfer of all the property and effects of said Dunn, and inured to the benefit of his creditors in proportion to the amount of their respective claims." And it was further adjudged "that said Dunn surrender to the receiver all property and effects in his possession or under his control, except such property as is exempt from execution," all of which, including the property levied on under the executions from Kenton and Gallatin, was adjudged to be sold, and was sold.

The case having been referred to the master to hear proof and report debts, he reported all the debts for which executions had been levied; and in ordering distribution of the fund arising from the sale of the property levied on, the court adjudged that the execution plaintiffs acquired no lien by the levy of their executions, and distributed the fund accordingly; and of that action of the court they now complain.

The court based its judgment, declaring that Dunn had committed an act which operated as an assignment of all his estate for the benefit of all his creditors, alone upon the assignment of the judgment against Dean in September, 1861, and did not adjudge that the confession of judgment in favor of the creditors who brought suits in Kenton and Gallatin was a violation of the act of 1856; and it results therefore that the judgment in no wise affected the levies made under executions issued on those judgments, but left the rights of the execution plaintiffs, so far as their levies were concerned, just as they would have stood if no such judgment had been rendered.

The records of the suits in which the judgments were re-covered against Dunn in Kenton and Gallatin appear to be regular in all respects; and as the act to suspend the courts had not then been passed, no reason is perceived for holding that the judgments were void. It is not claimed that the record shows that the debts sued on in those cases were not subsisting *bona fide* debts, or that there was any actual fraud on the part of the plaintiffs therein in obtaining or on the part of defendant Dunn in confessing those judgments.

It is contended, however—and there is no room to doubt the fact—that the judgments were confessed in contemplation of insolvency, and with the design on the part of Dunn to prefer the plaintiffs therein, and that the suits were brought by them in order to obtain such preference. But as the making of sales, mortgages, or the like to prefer creditors is not of itself such fraud as will *ipso facto* vitiate the act and render it void, but only renders it voidable at the election of creditors made by petition filed within six months (Wintersmith & Young v. Pointer & Conway, 2 Met. 460), the judgment in such cases should ascertain the act adjudged to be within the statute; and when several acts are relied upon in the petition as being each within its provisions, and the judgment is ex-pressly based on one of them, and its date is given, then this court will presume that the court did not mean to adjudge that any act prior to that named in the judgment was within the statute, and will treat the case as if the act specified by the court below was the only act complained of in the petition, and will uphold all liens acquired prior to that time which are not fraudulent in fact.

More than six months elapsed between the date of the judg-ments and the levy of the executions and the commencement of Woodruff's suit under the act of 1856. This furnishes a conclusive reason for holding that any lien acquired by the appellants by the levy of their executions is unaffected by that

act.   The circuit court expressly based its judgment upon the assignment of the judgment against Dean to Conn; and as a judgment based on a confession of judgments in April, 1861, would have been erroneous, we should be bound, if the judgment was silent on the subject, to presume it was based on the assignment and not on the acts of confessing judgments in Kenton and Gallatin.

It has been repeatedly held that the giving of a preference to one or more creditors is not in itself fraudulent as to other creditors (18 B. Mon. 201; 3 Met. 539; 2 Duv. 278; *Ib.* 371; 8 Dana, 215); and although the fact is well established that Dunn confessed judgments in favor of these appellants in contemplation of insolvency, and with the design to prefer them to the exclusion of his other creditors, such preference was not unlawful; and not having been adjudged to be within the act of 1856, the lien, if any, acquired by the levy of the executions must now be treated as valid and as entitling the appellants to preference as to any surplus of the fund arising from the sale of the property levied on after satisfying prior liens.

This brings us to the consideration of the question made by counsel for the appellees whether the levy of the executions created liens in favor of the plaintiffs in the executions.

Although it is earnestly and plausibly insisted by counsel, that as mortgaged property is only subject to levy and sale under execution in virtue of the statute, and as the statute declares that the purchaser of such property under execution shall acquire a lien on it for the purchase-money, subject to the prior encumbrance, a lien is not created on encumbered property by the levy of an execution, we can not regard the question as open to serious controversy.

An execution binds the estate of the defendant from the time of its delivery to the proper officer. (R. S., sec. 1, art. 3, chap. 36.) This applies to every species of estate subject to

levy and sale under execution, whether so at the common law
or made subject by statute. It has been repeatedly held by
this court that the levy of an execution upon property subject
to seizure under it creates a lien thereon in favor of the plain-
tiff in execution; and we see no reason, either in the language
of the statute or in the reason of the subject, for holding that
a levy upon encumbered property does not create a lien upon
it in the same manner as if it was unencumbered. The statute
does not undertake to declare what shall be the effect of the
levy of executions upon either encumbered or unencumbered
land. Both are made subject to levy by statute, and the same
principles which led to the decision that a levy on unencum-
bered land created a lien upon it requires us to hold that a
levy on encumbered land creates a lien upon it also.

The provision of the statute is not, as counsel seem to un-
derstand it, that the plaintiff shall acquire a lien by the sale
of encumbered property. It is silent as to what he shall
acquire by either levy or sale, but declares that the *purchaser
shall acquire a lien* for his purchase-money and interest thereon,
and leaves the question as to the effect of the levy to be deter-
mined as in other cases.

Nor is there any thing either in the language of the act of
1856 or the presumed intention of the legislature which would
subordinate a lien acquired even in disregard of that act, but
which had not been *adjudged* to be within its inhibitions, to
a judgment founded upon a subsequent act which has been
decided to be in contravention of its terms.

The judgment rendered in this case operated to declare an
assignment of all of Dunn's property and effects as of Sep-
tember 21st, 1861, and to subject to the control of the court,
for the purposes of the act, all the property and effects so
transferred.

But it did not operate to divest liens theretofore legally
created (Corn v. Sims, 3 Met. 400); it vested in the creditors

just such estate as the debtor then had, subject to such prior liens as existed upon it; and although, no sales having been made under the executions, the chancellor properly took charge of the property upon which they had been levied and sold it, he should have distributed the proceeds according to the rights of the parties acquired before the doing of the act which was made to operate as an assignment, just in the same manner as if Dunn had on the 21st of September, 1861, by deed, conveyed all his estate to a trustee for the benefit of all of his creditors.

Wherefore the judgment is *reversed,* and the cause is remanded with directions to render a judgment of distribution in conformity to this opinion.