King, &c., v. Moody.

---

CASE 13—EQUITY—OCTOBER 26, 1880.

# King, &c., v. Moody.

79 63
104 808

APPEAL FROM SHELBY CIRCUIT COURT.

1. A debtor, desiring to prefer his individual creditors to the exclusion of those to whom he was liable as surety merely, in order to accomplish that purpose, sold his property, and applied the proceeds to the payment of his individual debts. This, whether so intended or not, was an evasion of the act of 1856.

2. Whenever the debtor contemplates insolvency, and, with the design to prefer one or more creditors, does an act which enables the favored creditor, through the forms of legal proceedings, to obtain a preference he could not obtain without such act of the debtor, it comes within the act of 1856.

BULLOCK & BECKHAM FOR APPELLANT.

1. The proof shows that Bright's assets exceeded his liabilities several thousand dollars.

2. Insolvency and a design to prefer creditors must concur before the trust for the benefit of all his creditors can result from the operation of the statute. (11 Bush, 353.)

3. Bright could not know, nor could he believe, with any reasonable certainty, that he would be called on to pay the debts he owed for others as surety.

CALDWELL & HARWOOD FOR APPELLEE.

1. The statute evidently designed to secure an equal distribution of the estates of insolvent debtors, and to prevent an evasion of any of its provisions by any device whatever.

2. Since the original act of 1856, the statute has been enlarged, and now covers every conceivable device to prefer creditors. (Letcher v. Stagner, 2 Duv., 424; Wilson v. Snelling, 3 Bush, 322.)

3. The debts Bright owed as surety were as much his debts as if he were principal.

JUDGE COFER DELIVERED THE OPINION OF THE COURT.

The total amount of Bright's individual indebtedness at the time he made the payments amounted to the sum of $8,136 20, including interest on King's debt, and $125 to Ford. His assets amounted to about $9,000, exclusive of the railroad stock and bonds, which had only a speculative value, and could not be relied upon for the payment of debts.

He was surety for J. M. Calloway to Guthrie for $2,593, and for Jones & Bro. for $600. Calloway was dead, and his estate insolvent, and Bright supposed then that it would pay from twenty-five to fifty per cent. One half the Guthrie debt is $1,296, besides interest.

He could only count on Calloway's estate paying of that sum $332, leaving $964 to be paid by him as surety.

This liability then known consumes all that was left of his assets after paying his individual debts; so that, leaving out of the account his liability for Hopkins and Jones Bros., and on the $9,000 note to the Bank of Eminence, on each of which he might reasonably have anticipated that he would be compelled to pay something, he must have known when he made the payments to the appellants that he was insolvent.

2. Mrs. Snapp was a creditor when she sued. The writing consenting to the discharge of Hopkins was signed by her before the suit was commenced, but only became effectual when signed by Miles, which was not done until after the suit was brought.

As she was a creditor when the suit was commenced, it inured to the benefit of all the creditors, and might be taken advantage of by any of them at any time before it was actually dismissed as to her. (Sawyers v. Langford, 5 Bush, 539.)

King, &c., v. Moody.

3. The statute declares that every sale, mortgage, or assignment made by debtors, and every judgment suffered by any defendant, or any act or device done or resorted to by a debtor, in contemplation of insolvency, and with the design to prefer one or more creditors, &c., shall operate as an assignment for the benefit of all his creditors.

It has been held that in order to bring a sale within the statute it must be made to a creditor or colluding stranger. (Temple, Barker & Co. v. Poyntz, 2 Duv., 277.)

Brentlinger, to whom Bright sold his land, was not a creditor, and if any act of Bright has operated to transfer his estate for the benefit of all his creditors, it was the payment of the money arising from the sale to his individual creditors, with the design to prefer them to the exclusion of those to whom he was liable as surety merely.

Whether the simple payment in money, when made in contemplation of insolvency and with the design to prefer the creditor so paid to the partial or total exclusion of other creditors, is within the statute, has never been decided by this court.

The act of 1856, as originally adopted, did not contain all the provisions now contained in article 2, chapter 44, General Statutes. The words, "and every judgment suffered by any defendant, or any act or device done or resorted to," are not in the original act. But they are contained in an amendment approved March 8, 1862. (Myers' Supp., 239.)

This amendment may have been suggested by the facts out of which the case of Letcher v. Stagner (2 Duv., 423) originated in the spring of 1861. There Stagner, with the design to prefer certain creditors over others who had sued him, went into court on the first day of the term and con-

King, &c., v. Moody.

fessed judgments in favor of certain creditors whom he desired to prefer, and co-operated with them in having executions issued and placed in the sheriff's hands on the same day, thereby creating liens in advance of the time when the creditors who had sued could obtain judgments and executions. This was held to be within the statute, "because it gives a lien on the debtor's property," and thus "transfers" an interest in it as effectually as a more technical "mortgage" or "assignment" could possibly have done. It was, therefore, in essence and effect, and, consequently, in both the popular and legislative sense, "an assignment," made "in contemplation of insolvency."

Wilson v. Snelling (3 Bush, 322) was a very similar case.

These cases establish this principle, that whenever the debtor contemplates insolvency, and with the design to prefer one or more creditors, does an act which enables the favored creditor, through the forms of legal proceedings, to obtain a preference he could not have obtained without such co-operating act, such act is within the statute.

In this case, the debtor desiring to prefer his individual creditors to the exclusion of those to whom he was liable as surety merely, *in order to accomplish that purpose sold his property*, and applied the money arising from the sale to the payment of his individual debts. This, whether so intended or not, was an evasion of the statute, and if sanctioned, would practically defeat its operation.

Wherefore, the judgment is affirmed.

Judge Pryor not sitting.