JUDGE BULLITT
delivered the opinion of the court:
Murrill, and other creditors of Applegate, sued him and others on the 19th March, 1859, alleging, in substance, that he, with the aid of Maddox, had sold a part of his property, within six months past, in contemplation of insolvency, and with the intent to prefer one or more of his creditors to the exclusion, in whole or in part, of the plaintiffs and others, and *23 praying that his property might be subjected to the payment of his debts pro rata,-according to the provisions of the act of 1856. (Session acts, 1855-6, vol. 1, page 107.)
Applegate and Maddox denied that at the time of the sales complained of, either of them knew or believed that Apple-gate was insolvent, and say they believed he .would be able to pay all his debts, and that said sales were made to wind up his business, and pay his debts, and not to prefer any credit- or, nor in contemplation of insolvency. A judgment in accordance with the .prayer of the petition’ was rendered by the. court below, from which Applegate and Maddox .took this appeal.
The following facts appear: On the 7th March, 1859, Apple-gate, who was a retail grocer in Georgetown, executed a power of attorney, authorizing Maddox, his father-in-law, to sell his property of every description, collect debts due to him,, pay debts owing by him, and transact and perform all his business of every kind. Applegate then owed Maddox about $2,000, and owed about $3,000 for which Maddox was his surety, and other debts to the amount of about $5,000, making in all over $10,000, for a considerable part of which suits were pending against him; and his property, (consisting of a dwelling-house, furniture, and interest in several slaves, merchandise, and choses in action,) was not worth more than about $4,000. Maddox promptly commenced collecting the debts, and selling the merchandise by private and public sale, and so continued until this suit was brought. It appears that several notes, given by purchasers of the merchandise, were taken by Maddox, payable to his individual order, and it does not appear that any of the notes for merchandise were made payable to Applegate. A clerk employed to aid in selling the merchandise testifies, that he was instructed by Maddox not to let any of the purchasers set off their claims on Applegate against their debts for merchandise, and that three creditors who applied for such offsets, were refused. An attorney, representing two other creditors, applied to Maddox to know whether the proceeds of the property would be applied to Ap-plegate’s debts pro rata, and Maddox replied that he had no *24 answer to make. Another creditor,- who called on Maddox during the progress of the sale, was told by him that he should be paid; that he (Maddox,) thought there was enough to pay all. All the money obtained by Maddox by selling the merchandise and collecting the debts due to Applegate, was applied by him to the payment of debts for which he was Ap-plegate’s surety. Applegate was in bad health, and unable to attend regularly to business, though he was not confined to his house, and was at the store occasionally during the progress of the sale by Maddox.
In our opinion the condition of Applegate’s health, and of his pecuniary affairs, rendered it advisable for him to close his mercantile business, and the employment of an agent for that purpose would have been proper and perhaps necessary. But Maddox was not employed merely for that purpose.
The power of attorney, in efiect, authorized Maddox to pay such oí Applegate’s debts as he might choose. That he would pay those due to himself, or for which he was liable as surety, was a result so natural that it must have been contemplated by Applegate. That this was contemplated by both of them seems evident from their conduct, as there is no reason to doubt that Maddox’s application oí all the money realized, to the debts for which he was bound as surety, and his refusal to pay or to allow anything to other creditors,-met Applegate’» approval.
In view of the limited circle of Applegate’s business, of the excess of his liabilities over his assets, and of the suits against him, he must be regarded as having known that he was insolvent when he executed the power of attorney. The statute would be of little value to creditors, if the courts should require them to produce stronger evidence than the facts above mentioned, in order to prove a debtor’s knowledge of his insolvency.
Our opinion is, that Applegate’s sales, through Maddox as his attorney, were made by him in contemplation of insolvency, and with the intent to prefer Maddox, and those to whom he was bound as surety, over the other creditors.
Wherefore the judgment is affirmed.