CASES 23-26—PETITIONS EQUITY—OCTOBER 1.

# Thompson, &c. v. Heffner's executors, &c.
# Thompson v. Jones, &c.
# Jones v. Heffner's executors, &c.
# Heffner's executors, &c. v. Tobin.

APPEALS FROM FRANKLIN CIRCUIT COURT.

1. SURETIES ARE CREDITORS.—Where sureties are preferred by a mortgage from the principal debtor, made in contemplation of insolvency, they should be regarded as creditors within the meaning of the act of 1856, as the mortgage inures to the benefit of the creditor to whom the sureties are bound. (Terrill v. Jennings, 1 Met. 458; Corn v. Sims, 3 Met. 397.)

2. INSOLVENCY OF THE DEBTOR AND A SALE, MORTGAGE, OR ASSIGNMENT to or for the benefit of a creditor must concur before the trust for creditors can result from the operation of the statute. (2 Duv. 277.)

    If the facts are such as to show that at the time of making a conveyance preferring one creditor to others the debtor must have known he was insolvent, it will be within the statute. (4 Met. 23.)

    But if he did not know and contemplated becoming insolvent, and made such conveyance, it is equally obnoxious to the law.

3. *Probability of insolvency.*—REASONABLE CERTAINTY OF LIABILITY AS SURETY.—When the assets of a debtor exceed his own debts, and it is sought to bring a sale, mortgage, or assignment, made by him to a creditor within the statute because his liabilities as a surety when added to his own debts exceed his assets, it must be shown that he knew at the time, with reasonable certainty, that he would be called on to pay enough of his liabilities for others, when added to his own indebtedness, to render him unable to pay all.

4. LIEN FOR INDEMNITY—ENCUMBERED PROPERTY.—Where two persons exchange property, and that of one being encumbered by a mortgage, and a lien for indemnity is reserved on that given in exchange for it, that lien is in effect for purchase-money, and is an encumbrance on the property, and execution sale thereof should be made as of encumbered property.

VOL. XI.—24

5. *The failure to notice such lien, in the levy of an execution* or the return of sale, may be a ground for quashing the sale in a direct proceeding for that purpose, but does not render it invalid when collaterally attacked.

6. HOMESTEAD RIGHT RETAINED WHEN EXCHANGED FOR OTHER PROPERTY.—Where an exchange of real estate is made, if either of the parties thereto is at the time entitled to a homestead right in the property he parted with, he takes the same right in the property he receives in exchange.

A. J. JAMES, ⎫
A. DUVALL, ⎬ . . . . . . . For Thompson & Groom,

CITED

General Statutes, p. 435, sec. 1.
3 Bush, 402, Whitaker v. Garnett.
2 Duv. 278, Temple, Barker & Co. v. Poyntz.
1 Bush, 273, Davis v. Gardiner & Co.
2 Bush, 289, O'Neil v. Miller.
4 Bush, 662, Bondurant v. Owens.
6 Bush, 116, Moriarity v. Vessey.
6 Bush, 321, Campbell v. Wooldridge.
1 Dana, 84, Letcher v. Bank of Commonwealth.
4 J. J. Mar. 3, Castleman v. Holmes.
2 Met. 338, Hampton v. Morris, &c.
4 Met. 213, Millett v. Pottinger.
1 Met. 455, Terrill v. Jennings.
4 Met. 23, Applegate v. Murrill, &c.
17 B. Mon. 368, Ettlinger v. Tansey.

G. W. CRADDOCK, . . . . . . . For Jones & Tobin,

CITED

4 Bush, 662, Bondurant v. Owens.
6 Bush, 115, Moriarity v. Vessey.
6 Bush, 321, Campbell v. Wooldridge.

T. N. & D. W. LINDSEY, ⎫
JOHN W. RODMAN, . . . ⎪
LYSANDER HORD, . . . ⎬ . . . For Heffner's ex'rs, &c.
THOMAS B. FORD, . . . ⎭

CITED

1 Met. 458, Terrell v. Jennings.
7 Bush, 160, Cantrill v. Risk.

3 Bankr. R. 99, Hardy v. Clark.
3 Amer. Law Times, 11.
3 Bankr. R. 74, Williams & Co.
4 Bankr. R. 77, Hardy, &c. v. Benninger, &c.
3 Benedict, 283, *In re* Dibble.
1 Abb. U. S. 440, Driggs v. Moore, Foot & Co.
2 Bankr. R. 181, Farrin v. Crawford & Co.
4 Benedict, 1, *In re* Smith.
4 Bankr. R. 50, *In re* Loder.

JUDGE COFER DELIVERED THE OPINION OF THE COURT.

January 21, 1874, John L. Moore and his wife executed, acknowledged, and delivered to H. P. Thompson, A. W. Thompson, and B. B. Groom, a mortgage on certain real estate situated in the city of Frankfort, to secure them against loss on account of their suretyship for him to the Farmers' Bank for a debt of six thousand dollars, and also on account of their liability as his sureties to any other person. But the mortgage does not appear to have been lodged for record, or recorded, until the 11th of March, 1874.

On the 23d of February of the same year, Moore and L. Tobin made an exchange of property by which Moore conveyed to Tobin a house and lot on the corner of Main and Washington streets, in Frankfort, in consideration of a house and lot conveyed by Tobin to Moore, and $5,000 in cash.

On the 11th of March, the day on which the mortgage to the Thompsons and Groom was recorded, two executions of *fi. fa.* against Moore, one in the name of C. P. Dowling for $75, and the other in the name of A. B. Jones for $815.16, came to the hands of the sheriff of Franklin County, and were, on the 15th of May following, levied upon the house and lot conveyed to Moore by Tobin.

On the 12th of March an execution, in the name of the Bank of Kentucky, against Moore came to the hands of the sheriff, and was levied, along with those in the names of Dowling and Jones, on the house and lot.

The sheriff advertised the property for sale under the executions, and the sale was made June 22d, when the Bank of Kentucky became the purchaser, but, owing to some misunderstanding about Moore's right to a homestead exemption, refused to execute bonds.

The house and lot were again offered for sale on the 10th of August, when A. B. Jones became the purchaser thereof at the amount of the executions of himself and Dowling, and one thousand dollars in addition thereto, in lieu of the homestead, which could not be allotted because the property was indivisible.

In a short time after the recording of the mortgage to the Thompsons and Groom it became apparent that Moore would be unable to pay his debts, and on the 3d day of June certain creditors of Moore commenced this suit against him and the Thompsons and Groom, and Tobin and others, in order to have it adjudged that the mortgage operated under article 2 of chapter 44 of the General Statutes (commonly called the act of 1856), to transfer all the property and effects of Moore for the benefit of all his creditors, and to have his estate, including the house and lot, conveyed to Tobin, and that conveyed by him to Moore and subsequently sold under executions and purchased by Jones, sold and the proceeds applied to the payment of Moore's debts.

Moore, Tobin, and the mortgagees answered and denied all the material allegations of the petition.

A. W. Thompson was the surety of Moore to the Bank of Kentucky on a note or bill for $200, and the bank sued and recovered judgment against both, and execution issued thereon which came to the hands of the sheriff on the 12th of April, 1874 (being one of the *fi. fas.* already referred to), and was levied on the 15th of May, in conjunction with the executions of Jones and Dowling, on the house and lot conveyed to Moore by Tobin. As already stated, the property was offered for sale

under those levies and purchased by the bank; but the bank having refused to give bonds, it was again offered for sale under writs of *venditioni exponas* and purchased by Jones, and the *venditioni* of the bank was returned indorsed, in substance, that the property had only sold for enough to satisfy the executions of Jones and Dowling, which, as already stated, came to the sheriff's hands one day in advance of that of the bank.

Thompson subsequently—to wit, on the 17th of October— paid off the judgment against himself and Moore, and took from the attorney of the bank an assignment of the judgment, and of "all executions and liens existing for the security of said judgment." He then caused an execution to issue on the judgment indorsed for his benefit, which was returned "no property found," and thereupon instituted suit against Jones and others setting forth the substance of the foregoing facts, and caused an attachment to be issued and levied on the house and lot.

That case was consolidated with the suit previously brought by Moore's unsecured creditors to have the mortgage to the Thompsons and Groom adjudged to be within the statute.

In his answer to the original petition, Moore, upon appropriate allegations, asserted claim to a homestead exemption.

The court, on final hearing, adjudged:

(1) That the mortgage to the Thompsons and Groom was made by Moore in contemplation of insolvency, and with a design to prefer a part of his creditors to the exclusion in whole or in part of others.

(2) That the sale to Tobin was valid and could not be disturbed.

(3) That Moore was entitled to a homestead exemption in the house and lot conveyed to him by Tobin, or to $1,000 out of the proceeds of the sale in lieu thereof, in case the lot was not divisible.

(4) That the execution and attachment levies of A. W.

Thompson on the house and lot were void, and his petition was dismissed, and the levies and sale under the executions of Jones and Dowling were set aside, and the house and lot adjudged to be sold, and the proceeds, less the homestead, to be equally distributed among Moore's creditors.

From that judgment the Thompsons and Groom appeal, and insist that the court erred in holding their mortgage to be within the operation of the statute.

Heffner's executors and the other plaintiffs in the creditors' suit appeal, and insist there was error in not subjecting the house and lot conveyed to Tobin for the benefit of all Moore's creditors, and also in allowing Moore a homestead in the house conveyed to him by Tobin.

A. W. Thompson also appeals, and complains that the court erred in holding the levy under the execution of the bank and under his attachment invalid.

And A. B. Jones complains because his purchase and the levies under which it was made were disregarded.

We will first dispose of the question whether the mortgage to the Thompsons and Groom was properly held to have been made in contemplation of insolvency and with a design to prefer one or more creditors to the exclusion in whole or in part of others; for if it should turn out that this part of the judgment is erroneous, there will be less difficulty in disposing of other questions, and some of those noticed in the argument will become immaterial.

Sec. 1, art. 2, chap. 44 of the General Statutes is in these words: "Every sale, mortgage, or assignment made by debtors, and every judgment suffered by a defendant, or any act or device done or resorted to by a debtor in contemplation of insolvency, and with the design to prefer one or more creditors to the exclusion in whole or in part of others, shall operate as an assignment and transfer of all the property and effects of such debtor, and shall inure to the benefit of all his creditors

(except as hereinafter provided), in proportion to the amount of their respective demands, including those which are future and contingent; but nothing in this article shall vitiate or affect any mortgage made in good faith to secure any debt or liability created simultaneously with such mortgage, if the same be lodged for record within thirty days after its execution."

Neither of the Thompsons or Groom was a creditor of John L. Moore, but as the bank to whom they were sureties was a creditor and the mortgage inured to its benefit it is to be treated, for the purposes of this case, as if made directly to the bank. (Corn v. Sims, 3 Met. 397.) If, therefore, the mortgage in question was made in contemplation of insolvency and with the design to protect the mortgagees against loss to the exclusion of creditors other than the bank, it was within the statute.

Both contemplated insolvency and a sale, mortgage, or assignment to or for the benefit of a creditor must concur before the trust for creditors can result from the operation of the statute. (Temple, Barker & Co. v. Poyntz, 2 Duv. 277.) But if the facts are such as to show that at the time of making a mortgage preferring one creditor to another the debtor must have known he was insolvent, it will be within the statute (Applegate v. Murrill, 4 Met. 23); for, if he knows he is insolvent, he must know that a mortgage to one of several creditors will prefer such creditor to the exclusion in whole or in part of others, and he must be taken to have designed that which he knew would result from his act.

If, therefore, Moore knew he was insolvent when he made the mortgage in question, the mortgage was within the statute. But it may have been within it even though he did not know he was insolvent. If he contemplated becoming insolvent and made the mortgage with the design to prefer the bank through the mortgagees, it is equally obnoxious to the law.

We are then to inquire, first, whether he was insolvent when he made the mortgage, and, if so, whether he knew the fact,

and if he either was not insolvent, or, being insolvent, was ignorant of the fact; then, secondly, whether he contemplated becoming insolvent in the future and designed by the mortgage to prefer the mortgagees, and through them the bank.

The individual indebtedness of Moore at the date of the mortgage, including his liability as surety for some of his sons which he then knew he would have to pay, did not exceed sixteen or eighteen thousand dollars, while his entire liabilities did not fall far short of thirty thousand dollars. His available assets at the date of the mortgage amounted to something like twenty-five thousand dollars. He was surety for his son, W. B. Moore, for nine or ten thousand dollars; and taking that liability into the estimate, there can be no doubt that he was insolvent; and as he must have known the amount of his debts and liabilities, we conclude that he knew he was unable to pay them at the time he made the mortgage.

But while he must have known he was unable to pay his own debts and all those for which he was liable as surety, it does not follow that he knew he was insolvent. His assets were ample to pay his own debts; and in deciding in his own mind whether he was solvent or insolvent he was not to consider the liabilities he was under as surety unless he knew with reasonable certainty that he would have those liabilities to pay.

We think he knew he would be required to pay all the debts for which he was surety, unless those of William B. Moore are an exception.

We therefore conclude that he did not know he was insolvent, unless the circumstances were such that he ought to have regarded it as reasonably certain that he would be called upon to pay the debts on which he was surety for his son William.

William had married a lady of fortune, and was residing on a farm belonging to her and engaged in farming, and was raising and selling crops, the proceeds of which belonged to him. He had always theretofore met his liabilities as far as appears.

His father had aided him to erect a house on his wife's land and had been his indorser, but does not appear ever to have been called on to pay any of his debts. It is not strange or unreasonable therefore that he should not have estimated his liability for William when he came to consider the question whether he was solvent or insolvent. As William had the means of paying his own debts, and up to that time had done so, it was not unreasonable to expect that he would continue to do so. The fact that he was subsequently called on to pay William's debts proves that he was insolvent, but it does not prove that he knew it when he made the mortgage.

Nor do we think that under the circumstances there was such reasonable certainty that he would have those debts to pay as will warrant the judicial conclusion that he contemplated becoming insolvent, and designed by the mortgage to provide for the mortgagees, in order that when the expected insolvency came they, and through them the bank, would be preferred to his other creditors.

The statute in question, if rightly construed, will vindicate the wisdom of the legislature in adopting it, while a too rigid construction will not only defeat its real object, but will, by tying the hands of embarrassed and struggling debtors, bring bankruptcy upon many who might otherwise escape it.

To hold that whenever a debtor's liabilities exceed his assets he can not lawfully sell property or make mortgages to his creditors, although his own debts and those of others for whom he may be liable, and which it is reasonably certain he will be required to pay, may be greatly less than his available means of payment, will tend to cripple debtors and embarrass trade to a degree never intended by the legislature, and which neither the language or policy of the statute demands.

Such a construction we have no doubt would involve many individuals and firms largely engaged in commerce, and who are in fact solvent beyond all doubt, so that they could not

sell or mortgage to a creditor without exposing themselves to the consequences of an infraction of the statute.

Credit is indispensable to commerce and trade. The largest and wealthiest operators must often borrow and furnish sureties and in turn become sureties. In this way their nominal liabilities no doubt often exceed their assets when they are not only not insolvent but wealthy.

If, however, it be held that a debtor who sells or mortgages property, or assigns choses in action to his creditor in payment or as security for a debt, has violated the statute, if it shall turn out that his liabilities at the moment exceeded his assets, few commercial men, we imagine, would be secure either in buying or selling, or in making or receiving mortgages, or in making or receiving pledges as collateral security for existing debts.

When the assets of the debtor exceed his own debts and it is sought to bring a sale, mortgage, or assignment made by him to a creditor within the statute because his liabilities as a surety when added to his own debts exceed his assets, we take the true rule to be that it must be shown that he knew at the time with reasonable certainty that he would be called on to pay enough of his liabilities for others, when added to his own indebtedness, to render him unable to pay all. This has not been done in this case, and we are therefore of opinion that the court erred in its judgment on this branch of the case.

The conclusion just reached renders it unnecessary, so far as Heffner's executors and their co-appellants are concerned, to decide whether or not Moore was properly adjudged entitled to a homestead in the house and lot conveyed to him by Tobin. It also disposes of their appeal against Tobin, and of the appeal of A. B. Jones, in which he complains of the judgment setting aside his levy upon and sale of Moore's house and lot. These were set aside upon the ground that the mortgage, being within the statute, operated to divest Moore of title. The re-

versal of that part of the judgment carries with it the grounds upon which the judgment against Jones rested, and consequently that judgment must be reversed also.

A part of the lot conveyed to Tobin is embraced in the mortgage to the Thompsons and Groom, and in order to secure him against being disturbed by its foreclosure Tobin reserved a lien on the lot conveyed to Moore for indemnity. This lien was in effect for purchase-money, and was an encumbrance on the property.

Sec. 1, art. 14, chap. 38 of the General Statutes provides that "when the defendant in an execution owns the legal title to land encumbered by a lien for purchase-money . . . . the interest of the defendant may be levied upon and sold subject to such encumbrance," and that the purchaser shall acquire a lien thereon for the purchase-money and interest at ten per cent per annum, etc.

The levy and sale under the executions in favor of Jones and Dowling, if valid, gave the purchaser a lien only, and whatever part of the lot may remain after satisfying that lien will belong to Moore and is subject to his debts; and A. W. Thompson having levied an attachment upon it, will be entitled to so much of such surplus as will satisfy his judgment, and the court erred in dismissing his petition.

This renders it necessary that we should decide whether the levy and sale under the executions of Jones and Dowling are valid, and if they are, then, as the property may not sell for enough, over and above the value of the homestead, to satisfy the lien of the purchaser, and the judgment in favor of the bank which is now held by A. W. Thompson, and for which he has levied an attachment, it will be necessary to decide whether Moore is entitled to a homestead exemption.

It is insisted that as the property was encumbered, but was levied on and sold as if unencumbered, the sale was invalid, and that a sale, or an attempt to make a sale, having been

made, the levy was discharged, and that consequently Jones and Dowling have not even a lien under their levies.

No mention is made in the levies of Tobin's lien, but the sheriff's return of the sale shows the property was sold subject to a lien, but does not say in whose favor or for what amount. We do not, however, regard this as important. That sale was not void, but vested the purchaser with whatever title or interest the sheriff could lawfully sell.

The failure to notice the lien in the levies, or to describe it in the return of sale, might have been ground for quashing the sale in a direct proceeding for that purpose, but does not render it invalid when collaterally attacked. We are, therefore, of the opinion that Jones has a valid lien.

It is insisted that Moore is not entitled to a homestead because he purchased the land after the debts against which he claims were created.

Section 16, article 13, chapter 38, General Statutes, relating to the exemption of homesteads, reads as follows: "The exemption provided for in this chapter (article) shall apply to all persons, of any race or color, who are actual *bona fide* housekeepers of this commonwealth, but shall not apply to sales under execution, attachment, or judgment at the suit of creditors, if the debt or liability existed prior to the purchase of the land, or *of* (to) the erection of the improvement thereon."

The evident object of this section was to prevent the conversion into a homestead of property which was subject to sale for the satisfaction of a debt when it was created, or the purchase of a homestead which would be exempt with means that should have been applied to the payment of debts already contracted. In both these cases the creditor who would thus be defeated in the collection of his debt by the use of the means he had a right to look to for payment, and on the faith of which he may have contracted, would be injured and have just cause for complaint.

In this case, however, no such injury will be done to prior creditors. Moore had a homestead right in the lot conveyed to Tobin in exchange for the one he now owns. In the exchange the exempted homestead in one paid for a like exemption in the other, and nothing was withdrawn from creditors. If, instead of exchanging one residence for another, the first had been sold and the second purchased, the rule might be different.

The judgment of the circuit court is reversed on the appeals of H. P. Thompson, &c. v. N. Heffner's executors, &c., A. W. Thompson v. A. B. Jones, &c., and A. B. Jones v. N. Heffner's executors, &c., and affirmed on the appeal of Heffner's executors, &c. v. L. Tobin, &c., and the cause is remanded with directions to dismiss the petition of Heffner's executors, &c. v. John L. Moore, &c., and then to proceed upon the petition of A. W. Thompson to sell the house and lot belonging to Moore and dispose of the proceeds as indicated in this opinion.