STEPHEN DEAN *v.* I. C. SKINNER'S ADMR.

I. C. SKINNER'S ADMR. *v.* JOHN GAITSKILL'S EXR. ET AL.

I. C. SKINNER'S ADMR. *v.* ARCH STEVENSON.

GAITSKILL'S EXRS. *v.* WILSON.

[Abstract Kentucky Law Reporter, Vol. 3—336.]

**Preference of Creditor by Insolvent Person.**

Whether an insolvent debtor be ignorant of the fact that he has no right to prefer one creditor to others, or knowing such fact designs to prefer, if the debtor knows that he is insolvent he must be presumed to know that to secure one creditor in preference to another is fraudulent, and he will be taken to have designed that which necessarily follows from his own action.

**Knowledge of Insolvency.**

To render fraudulent against other creditors the act of preferring one creditor to another by an insolvent debtor, the fact of insolvency need not have been known to the creditor. If the debtor knows of his insolvency and does an act resulting in preferring one of his creditors over others, such act is fraudulent and will be taken as a general assignment of all of his property for the benefit of all of his creditors.

APPEAL FROM CLARK CIRCUIT COURT.

October 27, 1881.

OPINION BY JUDGE PRYOR:

This petition was filed by the sureties, charging actual fraud on the part of Tanner in disposing of his property and obtaining an attachment; and also by an amended pleading they charge constructive fraud and seek to bring the case within the statute against fraudulent preferences.

Tanner being liable, as the guardian of his infant children, for a large sum of money and failing to account for it, an action was instituted on his guardian's bond against himself and sureties. The sureties were I. C. Skinner and Ramsey, and were liable, as had been ascertained by a judicial determination, for near $9,000 on account of the default of their principal.

Some time in the fall of 1871, Tanner had a public sale of all his stock and personalty, and in a short time thereafter sold a

very valuable tract of land. The land was sold to Jacob Wilson in two payments, the aggregate amount being $16,310.

The embarrassed condition of Tanner seems to have been known by many of his neighbors, and several of them purchasing at the sale of his personal estate made the purchase with a view of satisfying their debts against him. It is insisted that the opinions of those who lived near the debtor and in the same county as to his pecuniary condition were incompetent to establish his insolvency. While it is by no means conclusive it is certainly evidence in a case like this for the purpose of showing the motives of the debtor in disposing of his property, as well as conducing to establish his insolvency. One familiar, by reason of his association and intimacy, with his neighbor and the property owned by him may be able to speak of his ability or inability to pay his debts without knowing every debt he owes, or the exact value of the property owned by him. Nearly all those who speak of the condition of Tanner were of the belief when his sale was made, or about that time, that his pecuniary condition was embarrassing, and the fact of the sale of the personalty and his valuable land was calculated to convince the creditor that he was selling from absolute necessity, either for the purpose of paying his debts or converting his estate into money so as to shield it from the claims of creditors. The latter seems to have been his object, as his subsequent conduct plainly demonstrates. It is certain, however, that the fact of his being on the verge of insolvency was notorious in the county where he lived. He seems to have collected the greater part of the first note given for his land, and what became of the money does not distinctly appear.

In January, 1872, he seems to have become anxious to dispose of the last note due for the land sold Wilson. For that purpose, he applied to John Gaitskill, a shrewd man, who lived in the same county and held two notes on Tanner at that time, one for $391 payable to himself, and another for seven or eight hundred dollars payable to his mother.

Arch Stevenson, it seems, was surety on both notes, or rather they had attached to them what purported to be the name of Stevenson as surety, and so far as this case is concerned the signature must be regarded as genuine. Stevenson was the brother-in-law of Tanner, and this record discloses the fact that the former's name had been freely used by Tanner without any authority.

Gaitskill discounted the paper at 12% and deducted the amounts due him and his mother and became the owner by assignment. What property Tanner had in January, 1872, when this assignment was made, does not clearly appear, but it is evident that at that time he had no property subject to execution except some stock of not much value, and equally as manifest that he was then unable to pay his debts. He says he knew at that time that he was in an insolvent condition, but up to the time of the suit against him by his sureties he thought he would be able to pay out. His land and personalty had then all been sold, and he owed nearly seventeen thousand dollars, besides a large claim said to be due I. C. Skinner arising out of a partnership transaction, and perhaps debts to others. He had sold all his interest in certain other property, of not much value, to his son, and it is evident that in January, 1872, his creditors were anxious and had reason to apprehend that their debts due by Tanner were in danger of being lost, and that Gaitskill, with a view of securing his debt, sent his son to see Wilson to know if he was still owing the amount of his last note.

It is immaterial, however, whether the appellant's intestate (John Gaitskill) knew of the insolvency of Tanner at the time he bought the note, or that he purchased it with a view of securing what was owing him or his mother; still, if the debtor were insolvent, and the act done by him caused the preference, or rather if the preference were the necessary result of his action, the case is brought within the statute.

A party insolvent may not in his own mind design to prefer, or may be ignorant of the fact that he has no right to prefer; yet if the debtor knows that he is insolvent, he must be presumed to know that to secure one creditor in preference to another is constitutionally fraudulent, and he must be taken to have designed that which necessarily follows from his own action. See *Applegate v. Murrill*, 4 Met. (Ky.) 22; *Thompson v. Heffner's Exrs.*, 11 Bush (Ky.) 353.

If, as counsel contend, the fact of insolvency and the design to prefer must have been known to the creditor as well as to the debtor, then this case is for the appellant. Such is not the language of the statute or the construction given by this court. The creditor may be entirely ignorant or innocent of any wrong, yet if insolvency with the design to prefer exists when the preference

is given, the case is clearly made out. Gaitskill must have known of the insolvency of Tanner, and hence his great anxiety to know whether the note was all right owing by Wilson, the same purchased of Tanner. The fact that Tanner defrauded both Wilson and Gaitskill by concealing the existence of Fry's lien, and that Gaitskill was at best a loser by the transaction, can not affect the decision of the question raised. When this note was purchased all the parties, that is, both Wilson and Gaitskill, were ignorant of the lien existing in behalf of Fry, and if that lien had not been asserted, or never existed, the preference would have been given. The intention to prefer at the time the note was assigned is not refuted by a subsequent event of which both parties were in ignorance. If the note had been paid off, no consideration therefor passing, the case might be different, but where the note is genuine and the transaction real, and the claim undisputed except as to a part of the note, the assertion of the lien by Fry can not relate back so as to relieve the parties from an act that rendered the original transaction a legal fraud. In the case upon the appeal of Dean the facts show clearly a preference, and therefore the judgment is *affirmed* on the appeal of Dean, and *reversed* on the cross-appeal of *Skinner's Admr. v. Gaitskill's Admr.*

As to the appeal of Gaitskill's administrator from the judgment in favor of Wilson we have but little difficulty. It is apparent from the entire proof that Wilson did not induce the appellant's intestate to purchase the note, but on the contrary the intestate of the appellant was approached by Tanner, and as a matter of precaution he doubtless desired to know if the note was right. The response by Wilson was that he supposed it was all right, and it would be paid when due, and if not the appellant's intestate would indulge him. He was then in ignorance of Fry's lien, and made just such a response as any debtor would have made under the circumstances. On the first interrogation of the witness who interviewed Wilson on the subject of the note, he says there was no statement made as to any defense or set-off, but that Wilson stated it would be paid when due. On the second examination the witness states that Wilson also said there was no set-off to the note. These statements are certainly conflicting, and evidence a purpose to strengthen the case on the principal issue made.

20

The inquiry was natural on the part of Gaitskill's son, and the response equally so, as first made, and to hold Wilson responsible under the facts of this case would be carrying the doctrine of estoppel so far as to preclude any defense to such an obligation when in the hands of a third party. The signature of Wilson to the paper implies his obligation to pay, and gave to the appellant all the information he obtained from Wilson when the inquiry was made. It was his obligation, and he expected to pay it when due. We find nothing in the case to show that Wilson induced the appellant to purchase this paper, but on the contrary it was Tanner, whose fraudulent designs appear in nearly every page of this record. It was appellant's intestate who trusted Tanner, and not Wilson. The judgment in favor of Wilson is therefore *affirmed.*

On the appeal of *Skinner's Admr. v. Stevenson,* it is plain, we think, that Tanner had no authority to sign the latter's name to the note, and while the original was filed by counsel in good faith, admitting the execution of the paper, it was at Tanner's instance, and the court under the circumstances acted properly in permitting the plea of non est factum to be filed. Judgment in favor of Stevenson is *affirmed.*

In this case the judgment is *affirmed* on the appeal of Dean and *reversed* on the cross-appeal of *Stevenson's Admr. v. Gaitskill,* and is also *affirmed* on the appeal of *Gaitskill Admr. v. Wilson,* and is *affirmed* on the appeal of *Skinner's Admr. v. Stevenson.*

*W. M. Beckner, for Skinner's Admr.*

*B. J. Peters, C. Eginton, for Dean and Gaitskill's Exrs.*

*C. Eginton, for Stevenson.*

*T. S. Tucker, for Wilson.*

[Cited, *Tichenor v. Owensboro Sav. Bank &c. Co.,* 113 Ky. 275, 24 Ky. L. 145, 68 S. W. 127.]