CASE 71—PETITION EQUITY—MAY 14.

# McCann, &c., v. Hill, &c.

### APPEAL FROM CARROLL CIRCUIT COURT.

1. ASSIGNMENTS BY OPERATION OF LAW—HOMESTEAD.—Where a debtor, in contemplation of insolvency, and with a design to prefer one creditor to the exclusion of others, makes a transfer of property, which under the statute operates as an assignment of all his property for the benefit of his creditors, and a petition attacking the transfer is filed within six months, the right of the creditors to the debtor's property relates back to the time the transfer was made, and is not affected by the acts of the debtor between the date of the transfer and the date of the filing of the petition, or of the sale of the property.

    At the time of the execution of a mortgage which, in an action filed within six months thereafter, was declared to operate as an assignment of all the mortgagor's property for the benefit of his creditors, the mortgagor did not reside upon the land mortgaged, but after the filing of the petition attacking the transfer, removed to it and occupied it as a home. He now claims it as a homestead as against the creditors. *Held*—That the mortgage operated as an immediate transfer of the mortgagor's property to the use and benefit of his creditors, and the mortgagor, by subsequently removing to the land, acquired no right to it as a homestead.

2. SAME.—If a debtor, knowing that he is insolvent, in order to give a particular creditor a preference over other creditors, gives him a mortgage to secure a debt or liability already created, together with a lia-

McCann, &c., v. Hill, &c.

bility simultaneously created, and the creditor, knowing the true state of case, aids the arrangement, he is not a mortgagee in good faith to secure a debt or liability created simultaneously with the execution of. the mortgage, and obtains no advantage over other creditors by reason of the fact that a portion of his debt was so created. But where the liability thus simultaneously created is that of surety upon a debt previously existing, the mortgagee is entitled to *prorate* with other creditors, if he pays the debt, since the original creditor would be entitled to *prorate*, and the surety should be allowed to stand in his shoes. Whether the creditor under such circumstances would be allowed to *prorate* with the other creditors if the debt itself was created simultaneously with the execution of the mortgage, is an open question.

3. SAME.—Where a surety, subsequently to his becoming bound as such, takes a mortgage for his indemnity from the principal, he is not protected by the exception of the statute in favor of a creditor whose debt is created simultaneously with the execution of the mortgage.

W. MONTFORT AND W. M. FISHER FOR APPELLANTS.

1. As the mortgagor was entitled to perfect his inchoate homestead right by occupying the land at any time before the effort to subject it to the satisfaction of a judgment against him, the mortgage, to the extent of one thousand dollars, did not prejudice other creditors, and was not within the act of 1856. (Nichols v. Sennett, 78 Ky., 630; Bennett v. Baird, 81 Ky., 554.)

2. The mortgage is valid to the extent that it was for a debt created simultaneously with its execution.

MASTERSON & GAUNT AND GEO. C. DRANE FOR APPELLEES.

1. The mortgage operates as a transfer under the statute, although one of the debts secured by it was created simultaneously with its execution. (Terrill v. Jennings, 1 Met., 459; Whitaker v. Garnett, 3 Bush, 411.)

2. Where sureties are preferred by a mortgage from the principal debtor made in contemplation of insolvency, they are to be regarded as creditors within the meaning of the act of 1856. (Thompson, &c., v. Heffner's Ex'r, 11 Bush, 353; Terrill v. Jennings, 1 Met., 458; Corn v. Sims, 3 Met., 397.)

3. The *inchoate* right of homestead is not vendible. If there is no actual occupancy, or if before the right to occupy is asserted, the ownership of the land is lost or parted with, the *inchoate* right is necessarily lost. In any event, it was too late for the debtor to assert his right after the process in this action had been executed. (Nichols v. Sennett, 78 Ky., 630.)

JUDGE BENNETT DELIVERED THE OPINION OF THE COURT.

On the twenty-third day of January, 1885, the appellant Lon E. McCann and his wife executed to the appellant Levi McCann a mortgage, which was duly acknowledged and recorded, on a tract of land containing about seventy-seven acres, belonging to the appellant Lon E. McCann, to secure a debt of thirteen hundred dollars, which debt was evidenced by a promissory note bearing even date with the mortgage.

The appellees, as creditors of the appellant Lon E. McCann, on the eighteeenth day of February, 1885, instituted suit in the Carroll circuit court against the appellants, in which they assailed said mortgage upon the ground that the same was given by the appellant Lon E. McCann, in contemplation of his insolvency, and with the design of preferring the appellant Levi McCann, one of his creditors, to the exclusion of the appellees and his other creditors.

The appellants, by their separate answers, denied that the mortgage was given in contemplation of Lon E. McCann's insolvency, or to prefer the appellant Levi McCann to the exclusion of Lon E. McCann's other creditors. They also alleged that the liability intended to be secured by the mortgage was created simultaneously with its execution. They further alleged that the land mortgaged was the homestead of the appellant Lon E. McCann, and was not worth more than one thousand dollars, and, therefore, he had the right to mortgage it to the exclusion of his other creditors.

We will first dispose of Lon E. McCann's claim to a homestead in the land mortgaged to Levi McCann.

The agreed facts relative to that matter are, that the

appellant Lon E. McCann, before and at the time he executed the mortgage to the appellant Levi McCann, was a housekeeper with his family, in the town of Ghent, some five or six miles from the land mortgaged. That he continued to reside and keep house in the town of Ghent until about a week after process was served upon him in this action, when he moved to the land mortgaged, and took up his residence on it as his home.

So the question is, do the foregoing facts entitle the appellant Lon E. McCann to a homestead as against the claim of the appellees.

The affirmative of this proposition is maintained by the appellant upon the authority of Nichols v. Sennett, &c., 78 Ky., 630. That case decides, that if the land was purchased, or the improvements made, prior to the creation of the debt, the homestead right attaches when the claimant is in occupancy as a housekeeper in good faith at the time the attempt is made by execution to subject the land. The clause of the statute giving the homestead is general in terms, allowing the exemption to all *bona fide* housekeepers with families, and without reference to the time at which the homestead may have been created by actual occupancy. The sixteenth section of the thirteenth article of chapter thirty-eight provides, that the exemption shall not apply if the debt existed prior to the purchase of the land, or prior to the erection of the improvements. This seems necessarily to imply that if the purchase of the land or the erection of the improvements was prior to the creation of the debt, the homestead existed without other condition than that the

vol. 85—37.

claimant be a housekeeper with a family, and in occupancy at the time it is attempted to enforce the claim.

The facts of this case readily distinguish it from the case *supra.* Section 1, article 2, chapter 44, of the General Statutes, is in these words: "Every sale, mortgage or assignment made by debtors, and every judgment suffered by a defendant, or any act or device done or resorted to by a debtor in contemplation of insolvency, and with the design to prefer one or more creditors to the exclusion in whole or in part of others, shall operate as an assignment and transfer of all the property and effects of such debtor, and inure to the benefit of all his creditors, except as hereinafter provided, in proportion to the amount of their respective demands, including those which are future and contingent; but nothing in this article shall vitiate or affect any mortgage made in good faith to secure any debt or liability created simultaneously with such mortgage; if the same be lodged for record within thirty days after its execution." Section 2 provides, that "all such transfers as are herein declared to inure to the benefit of creditors generally shall be subject to the control of courts of equity, upon the petition of any person interested, filed within six months after the mortgage or transfer is legally lodged for record, or the delivery of the property or the effects transferred." The debtor, by committing the acts denounced in the first section, transfers and assigns all of the property and effects owned by him at the time to the use of all of his creditors. And by section 2, the creditors may avail themselves of such assignment and transfer for

their use, by petition in equity, at any time within six months after the mortgage or transfer is legally lodged for record.

In other words, by committing the acts denounced by section 1, the creditor's property is transferred to the use and benefit of all of his creditors by operation of law—the title is transferred to them, and courts of equity, upon their petition, filed within six months after the transfer is lodged for record, must take hold of the property and distribute it equally among the creditors. By filing the petition within the time prescribed, the right of creditors to the property and effects relates back to the time the debtor committed the acts denounced by section 1, because these acts operate as an immediate transfer of his property to the use and benefit of the creditors.

The agreed facts conclusively bring the appellant Lon E. McCann within the denunciation of the first section of the statute, *supra;* and as he was not entititled to a homestead in the land at the time of the execution of the mortgage, because not occupied as such, and his acts having transferred his title to the land to the use of his creditors before there was such occupancy, and they having resorted to a court of equity within six months after, for the purpose of having said land appropriated to their equal benefit, it follows that his occupancy of the land after the acts which transferred the title to it to the use of his creditors, did not and could not give him a right to a homestead therein.

The agreed facts show that the appellant Levi McCann was, before the execution of the mortgage, surety

for the appellant on two notes—one for six hundred dollars and the other for two hundred and fifty dollars—and these sums were included in the mortgage. Also, another sum of one hundred and sixty-six dollars was included in the mortgage, which was created before the execution of the mortgage.

This court, in the cases of Corn v. Sims, 3 Met., 397, and Thompson, &c., v. Heffner's Executors, 11 Bush, 353, has decided that a surety who, subsequently to his becoming bound as surety, takes a mortgage for his indemnity from his principal, is not protected by the exception in favor of a creditor whose debt is created simultaneously with the execution of the mortgage, and he is therefore entitled to no preference over the mortgagor's general creditors to the extent of his liability attempted to be secured by the mortgage in the distribution of the insolvent's estate under the insolvent act.

The agreed facts also show that the appellant Levi McCann, simultaneously with the execution of the mortgage, became bound as surety for the appellant Lon E. McCann on a debt of two hundred and two dollars, which debt existed prior to the execution of the mortgage. The question is, was the appellant Levi McCann entitled to a preference as to this debt.

The record shows, that at the time Lon E. McCann executed the mortgage he was insolvent. That, on the same day he executed the mortgage, he sold his stock of groceries. That, at the time he executed the mortgage, he knew that he was insolvent, and the appellant Levi McCann also knew it.

While it is true that neither the letter nor spirit of

the statute forbids a debtor from creating a debt in good faith, though he be in failing circumstances, and securing the debt by giving a mortgage on his property simultaneously with the creation of the debt, which would hold good as against his other creditors, yet, if a debtor, knowing that he is insolvent, and in order to give a particular creditor a preference over other creditors, gives him a mortgage to secure a debt or liability already created, together with a liability simultaneously created, as was done in this case, and the creditor knowing the true state of case, as in this case, aids the arrangement, then he is not a mortgagee in good faith to secure a debt or liability simultaneously created with the execution of the mortgage. Such conduct on the part of the mortgageor and mortgagee would be a fraud upon the rights of the mortgageor's other creditors, and the mortgagee could obtain no advantage over them by reason of holding the mortgage. Such being the case, the appellant Levi McCann acquired no preference over Lon E. McCann's other creditors by reason of the fact that two hundred and two dollars of the mortgage debt was a liability created simultaneously with the execution of the mortgage. Whether or not the creditor under such circumstances would be entitled to prorate with the other creditors where the debt itself was created simultaneously with the execution of the mortgage, is an open question. But the appellant's right to prorate with Lon E. McCann's other creditors as to this particular debt, is based upon the fact that the original creditor would be entitled to prorate with the other creditors as to said debt, and the appellant Levi McCann, if he has paid the debt, may stand in his shoes.

The judgment of the lower court is affirmed.